UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF CHEM CARRIERS TOWING, LLC | CIVIL ACTION |
| | NO. 21-1025 |
| | SECTION: "G"(2) |

### ORDER AND REASONS

Before the Court is Petitioner Chem Carriers Towing, LLC's ("Chem Carriers") "Motion for Partial Summary Judgment."[1] Claimant Kai Hollingsworth ("Hollingsworth") opposes the motion.[2] Chem Carriers seeks partial summary judgment and dismissal of Hollingsworth's negligence and unseaworthiness claims.[3] For the reasons discussed in detail below, there are material facts in dispute precluding summary judgment on these claims. Accordingly, having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court denies the motion.

### I. Background

According to the Complaint, Hollingsworth was allegedly injured on June 10, 2020, when the bunk where he slept broke free from the wall of Chem Carriers' vessel the *M/V Sam L. Hays* ("the Vessel").[4] On November 10, 2020, Hollingsworth filed a petition in the Civil District Court for the Parish of Orleans requesting maintenance and cure as well as damages under the Jones Act

---

[1] Rec. Doc. 31.

[2] Rec. Doc. 35.

[3] Rec. Doc. 31.

[4] Rec. Doc. 1 at 1.

and general maritime law.[5] Chem Carriers was served notice of Hollingsworth's state court action on December 2, 2020.[6]

On May 27, 2021, Chem Carriers filed a Complaint for Exoneration from or Limitation of Liability in this Court.[7] Hollingsworth timely answered the Complaint,[8] and then filed a motion to dismiss, or alternatively motion for summary judgment, arguing that Chem Carriers failed to file this limitation of liability within six months of receiving notice of Hollingsworth's claim.[9] On April 21, 2022, the Court denied the motion finding that the asserted untimeliness of Chem Carriers' filing did not implicate this Court's jurisdiction, and that a genuine issue of material fact exists as to when Chem Carriers received notice of a claim with a reasonable possibility of exceeding the Vessel's value.[10]

On March 8, 2022, Chem Carriers filed the instant "Motion for Partial Summary Judgment."[11] On March 15, 2022, Hollingsworth filed his opposition.[12] On March 22, 2022, Chem Carriers filed a reply brief in further support of the motion.[13]

---

[5] Rec. Doc. 13-1 at 2.

[6] Rec. Doc. 1 at 3. In this Court's order denying Hollingsworth's motion to dismiss or alternate motion for summary judgment, the Court noted that there is some ambiguity in the record as to when Chem Carriers received notice of Hollingsworth's state court proceedings. *See* Rec. Doc. 59 at 2 n.5. However, this discrepancy does not affect the Court's analysis of the instant motion.

[7] Rec. Doc. 1.

[8] Rec. Doc. 4.

[9] Rec. Doc. 13.

[10] Rec. Doc. 59.

[11] Rec. Doc. 31.

[12] Rec. Doc. 35.

[13] Rec. Doc. 42.

## II. Parties' Arguments

### A.    *Chem Carriers' Arguments in Support of the Motion*

Chem Carriers moves the Court to dismiss Hollingsworth's negligence and unseaworthiness claims.[14] Chem Carriers argues that there is no evidence it was negligent or that the Vessel was not reasonably fit for its intended purpose.[15] Therefore, Chem Carriers asserts that it is entitled to summary judgment.[16]

First, Chem Carriers contends that Hollingsworth cannot establish the essential elements of his Jones Act negligence claim.[17] Chem Carriers notes that Hollingsworth testified that he used the bunk over eighty times before the alleged accident, and he testified he felt the bunk was safe and in proper condition.[18] Chem Carriers asserts that Hollingsworth's "own testimony confirms that there was absolutely no issue with the bunk up until the moment of the accident."[19] Chem Carriers points out that its Health, Safety, and Environmental Director, Doug LeBlanc, performed a vessel safety audit of the Vessel on April 15, 2020, less than two months before the accident, and noted no deficiencies with the bunk.[20] Additionally, Chem Carriers notes that LeBlanc relies on vessel crewmembers to notify him of deficiencies with any equipment, but he did not receive any complaints about the bunk before the accident.[21] Therefore, Chem Carriers asserts that there is no

---

[14] Rec. Doc. 31 at 1.

[15] Rec. Doc. 31-2 at 1.

[16] *Id.*

[17] *Id.* at 6.

[18] *Id.*

[19] *Id.* at 7.

[20] *Id.*

[21] *Id.*

evidence in the record to establish that it knew or should have known of an alleged defect in the bunk.[22] Therefore, Chem Carriers asserts that the negligence claim should be dismissed.[23]

Second, Chem Carriers asserts that the unseaworthiness claim fails because the bunk was reasonably suited for its intended purpose.[24] Again, Chem Carriers points to Hollingsworth's testimony that he felt the bunk was safe for use, in proper condition, and reasonably suited for its intended purpose.[25] Chem Carriers submits that the mere fact that an accident happened does not automatically render the vessel unseaworthy.[26] Therefore, Chem Carriers asserts that the unseaworthiness claim should be dismissed.[27]

### B.     *Hollingsworth's Arguments in Opposition to the Motion*

In response, Hollingsworth states that he does not contest many of the facts presented in the motion for summary judgment, but he asserts that "there are additional facts and opinions that require that this motion be denied in its entirety."[28] As to the negligence claim, Hollingsworth contends that an employer has the basic duty under the Jones Act to exercise reasonable care to provide seamen with a safe place to work.[29] Hollingsworth asserts that Chem Carrier's motion "is nothing more than a not so veiled attempt to shift the employer's burden of providing a safe place

---

[22] *Id.* at 8.

[23] *Id.* at 10.

[24] *Id.*

[25] *Id.*

[26] *Id.* at 9.

[27] *Id.* at 10.

[28] Rec. Doc. 35 at 1.

[29] *Id.*

for [a] seaman to work, to the seaman himself."[30] Hollingsworth points to LeBlanc's testimony that he never inspected the bunks, merely "glancing at them" when he conducted the safety audit.[31] Hollingsworth contends that his expert, Captain Gregg Nichols, will testify that an inspection of the bunk would have revealed the problem that caused the accident.[32]

As to the unseaworthiness claim, Hollingsworth argues that a temporary or unforeseeable malfunction or failure of a piece of equipment under proper and expected use is sufficient to establish a claim of unseaworthiness.[33] Hollingsworth asserts that deterioration of equipment may render a previously seaworthy vessel unseaworthy.[34] Hollingsworth contends that Nichols will testify that the support or anchor frames in the bulkhead where the lag bolts were connected was "more than likely deteriorated or wasted."[35] Hollingsworth argues that only a proper inspection of the bunk and the securing lag bolts could have revealed the defective condition.[36] For these reasons, Hollingsworth submits that the motion for partial summary judgment must be denied.[37]

C.  **_Chem Carriers' Arguments in Further Support of the Motion_**

In reply, Chem Carriers points out that Hollingsworth did not dispute any of the facts listed in its statement of undisputed facts.[38] Therefore, Chem Carriers submits that these facts should be

---

[30] *Id.* at 2.

[31] *Id.*

[32] *Id.*

[33] *Id.* at 3.

[34] *Id.* at 4.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] Rec. Doc. 42 at 1.

deemed admitted.[39] Chem Carriers concedes that LeBlanc did not specifically inspect the bunk during the safety audit.[40] Nevertheless, Chem Carriers submits that there is no evidence that any inspection would have revealed any defect in the bunk.[41] According to Chem Carriers, Hollingsworth is implying that the bunk framing was deteriorated or wasted, but there is no actual evidence in the record as to the condition of the framing.[42] Chem Carriers contends that Hollingsworth relies only on the unsupported speculation of Nichols, who never inspected the bunk, to reach this conclusion.[43] Chem Carriers submits that Nichols' conclusory and speculative opinions are not sufficient to create a genuine issue of material fact.[44] Finally, Chem Carriers asserts that Nichols' report is not competent summary judgment evidence because it is not sworn or verified and is not in the form of an affidavit or declaration.[45]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[46] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations

---

[39] *Id.*

[40] *Id.* at 2.

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.* at 3.

[45] *Id.* at 4.

[46] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

or weighing the evidence."[47] All reasonable inferences are drawn in favor of the nonmoving party.[48] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[49] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[50] The nonmoving party may not rest upon the pleadings.[51] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[52]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[53] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[54] If the moving party satisfies its initial burden, the burden shifts to

---

[47] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[48] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000))

[49] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[50] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[51] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[52] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[53] *Celotex*, 477 U.S. at 323.

[54] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little*, 939 F.2d at 1299).

the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[55] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[56]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[57] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[58]

## IV. Analysis

Chem Carriers seeks partial summary judgment and dismissal of Hollingsworth's negligence and unseaworthiness claims.[59] Each claim is addressed in turn.

### A.     *Whether Chem Carriers is Entitled to Summary Judgment on the Negligence Claim*

Chem Carriers contends that Hollingsworth cannot establish the essential elements of his Jones Act negligence claim.[60] Chem Carriers asserts that there is no evidence in the record to establish that it knew or should have known of an alleged defect in the bunk.[61] In response, Hollingsworth contends that an employer has the basic duty under the Jones Act to exercise

---

[55] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[56] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[57] *Little*, 37 F.3d at 1075 (internal citations omitted).

[58] *Morris*, 144 F.3d at 380.

[59] Rec. Doc. 31.

[60] Rec. Doc. 31-2 at 6.

[61] *Id.* at 8.

reasonable care to provide seamen with a safe place to work.[62] Hollingsworth asserts that Chem Carrier's motion "is nothing more than a not so veiled attempt to shift the employer's burden of providing a safe place for [a] seaman to work, to the seaman himself."[63]

A Jones Act employer is required to exercise "ordinary prudence under the circumstances,"[64] to maintain a "reasonably safe work environment."[65] "In order to prevail in a claim for negligence, the plaintiff must present some evidence from which the fact finder can infer that an unsafe condition existed and that the vessel owner either knew, or in the exercise of due care should have known, of the condition."[66] While the Jones Act employer's duty to provide a reasonably safe place to work is broad in scope, it is not a form of strict liability.[67] "[T]he employer must have notice and the opportunity to correct an unsafe condition before liability attaches."[68] Under the Jones Act, "an employer is liable for the negligence of his employees."[69] "If the defendant's negligence played any part, however small, in producing the seaman's injury, it results in liability."[70]

---

[62] Rec. Doc. 35 at 1.

[63] *Id.* at 2.

[64] *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338 (5th Cir. 1997) (en banc).

[65] *Ober v. Penrod Drilling Co.*, 726 F.2d 1035, 1037 (5th Cir. 1984) (per curiam).

[66] *Martinez v. Offshore Specialty Fabricators, Inc.*, 481 Fed. App'x 942, 945 (5th Cir. 2012) (citing *Perry v. Morgan Guar. Tr. Co. of N.Y.*, 528 F.2d 1378, 1379 (5th Cir. 1976)).

[67] *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989) (citing *Bobb v. Mod. Prods., Inc.*, 648 F.2d 1051, 1057 (5th Cir. 1981)).

[68] *Id.* (citing *Perry*, 528 F.2d at 1380).

[69] *Brister v. A.W.I., Inc.*, 946 F.2d 350, 354 (5th Cir. 1991).

[70] *Id.* (citing *Chisholm v. Sabine Towing & Transp. Co., Inc.*, 679 F.2d 60, 62 (5th Cir. 1982).

Many of the facts at issue in this case are undisputed. During his deposition, Hollingsworth testified that he slept in the bunk approximately eighty-six times before the accident.[71] Hollingsworth testified that he never had any problems with the bunk, and he felt it was safe and in proper condition.[72] Prior to the accident, Hollingsworth could not recall any complaints about the bunk, and he was not concerned that the bunk could come loose.[73]

Chem Carriers' Health, Safety, and Environmental Director, Doug LeBlanc, was also deposed. LeBlanc testified that he performs vessel safety audits twice per year.[74] Before he begins his audits, he gathers available crewmembers in the galley or wheelhouse to advise him of any issues on the Vessel.[75] LeBlanc performed an audit of the Vessel on April 15, 2020, less than two months before the accident.[76] That audit noted no deficiencies with the bunk.[77] However, LeBlanc stated that he only "glanced" at the bunks and he did not inspect them.[78]

Hollingsworth points to the report of his expert, Captain Gregg Nichols. The report states Nichols' opinion, based on review of photographs of the bunk room, that the bunk failed because the support frames on the vessel "were more than likely deteriorated or wasted."[79] Chem Carriers

---

[71] Rec. Doc. 31-4 at 7.

[72] *Id.* at 7–8.

[73] *Id.* at 11.

[74] Rec. Doc. 31-5 at 2.

[75] *Id.* at 3.

[76] *Id.* at 6.

[77] *Id.*

[78] Rec. Doc. 35-1 at 4–5.

[79] Rec. Doc. 35-2 at 5. Chem Carriers argues that the expert report is not competent summary judgment evidence because it is unsworn. This argument is unavailing. Unsworn expert reports may be considered as competent summary judgment evidence if the opinions expressed in them can be presented in an admissible form at trial. *See Patel v. Tex. Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019). Nichols' opinions can be presented in an admissible form

asserts that Nichols' opinion should be disregarded because he has never been aboard the vessel, never inspected the bunk, and has no particular expertise to allow him to even offer such an opinion. Chem Carriers' arguments regarding the admissibility of Nichols' testimony are subject of a separately filed *Daubert* motion. As discussed in more detail in the Order and Reasons addressing that motion, Chem Carriers' arguments ultimately go to the weight to be afforded to Nichols' proposed testimony, not to its admissibility. The Court cannot weigh evidence or make credibility determinations when deciding a motion for summary judgment.

The parties do not dispute that the bunk fell from the wall while Hollingsworth was sleeping. Chem Carriers asks the Court to accept that they could not have been aware of any defect in the bunk because Hollingsworth did not tell them of the condition and because their inspector did not find a defect when he performed a cursory inspection of the bunk room. Clearly, something caused the bunk to come loose from the wall. Hollingsworth's expert will testify that he believes the failure was the result of deteriorated or wasted support frames.[80] There are material facts in dispute regarding whether this alleged defect caused the bunk to fall and whether Chem Carriers in the exercise of due care should have known of the condition. Accordingly, Chem Carriers is not entitled to summary judgment on the negligence claim.

**B.     Whether Chem Carriers is Entitled to Summary Judgment on the Unseaworthiness Claim**

Chem Carriers asserts that the unseaworthiness claim fails because the bunk was reasonably suited for its intended purpose.[81] Hollingsworth argues that a temporary or

---

at trial through his testimony.

[80] Rec. Doc. 35-2 at 5.

[81] Rec. Doc. 31-2 at 8.

unforeseeable malfunction or failure of a piece of equipment under proper and expected use is sufficient to establish a claim of unseaworthiness.[82] Hollingsworth asserts that deterioration of equipment may render a previously seaworthy vessel unseaworthy.[83]

"General maritime law imposes a duty upon shipowners to provide a seaworthy vessel."[84] An unseaworthiness claim is "based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea."[85] Unlike a Jones Act negligence claim, unseaworthiness does not require notice.[86]

"A vessel is unseaworthy only if it presents an unreasonable risk of harm to the seaman."[87] The owner is not "obligated to furnish an accident-free ship."[88] Rather, seaworthiness requires only that "a vessel and its appurtenances must be reasonably suited for the purpose or use for which they were intended."[89] To succeed on an unseaworthiness claim, the plaintiff must also establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy.[90] The standard of causation for an unseaworthiness claim is more demanding than

---

[82] Rec. Doc. 35 at 3.

[83] *Id.* at 4.

[84] *Luwisch v. Am. Marine Corp.*, 956 F.3d 320, 326 (5th Cir. 2020) (quoting *Hlodan v. Ohio Barge Line, Inc.*, 611 F.2d 71, 74 (5th Cir. 1980)).

[85] *Gowdy v. Marine Spill Response Corp.*, 925 F.3d 200, 205 (5th Cir. 2019) (quoting *Beech v. Hercules Drilling Co., L.L.C.*, 691 F.3d 566, 570 (5th Cir. 2012)).

[86] *Luwisch*, 956 F.3d at 328 n.1; *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960) ("[T]he shipowner's actual or constructive knowledge of the unseaworthy condition is not essential to his liability.").

[87] *Park v. Stockstill Boat Rentals, Inc.*, 492 F.3d 600, 604 (5th Cir. 2007) (internal citations omitted).

[88] *Id.* (quoting *Mitchell*, 362 U.S. at 550).

[89] *Id.* (quoting *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347 (5th Cir. 1988)).

[90] *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001) (citing *Caldwell v. Manhattan Tankers Corp.*, 618 F.2d 361, 363 (5th Cir. 1980)).

for a Jones Act negligence claim and requires proof of proximate cause.[91] The plaintiff must prove "that the unseaworthy condition played a substantial part in bringing about or actually causing [an] injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness."[92]

Numerous courts have recognized that a "temporary and unforeseeable malfunction or failure of a piece of equipment under proper and expected use is sufficient to establish a claim of damages for unseaworthiness."[93] The parties do not dispute that Hollingsworth was using the bunk for its intended purpose—sleeping. As discussed above, there are material facts in dispute regarding whether an alleged defect in the vessel caused the bunk to fall. Accordingly, Chem Carriers is not entitled to summary judgment.

## V. Conclusion

For the foregoing reasons, there are material facts in dispute precluding summary judgment on Hollingsworth's negligence and unseaworthiness claims. Accordingly,

**IT IS HEREBY ORDERED** that Chem Carriers' "Motion for Partial Summary Judgment"[94] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 31st day of May, 2022.

*Nannette Jolivette Brown*
_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[91] *Gowdy*, 925 F.3d at 208–09.

[92] *Luwisch*, 956 F.3d at 326 (quoting *Offshore Express*, 845 F.2d at 1354).

[93] *Crane v. Diamond Offshore Drilling, Inc.*, 99-166, p. 15 (La. App. 5 Cir. 9/15/99); 743 So. 2d 780, 790 (quoting *Ferrara v. A. & V. Fishing Inc.*, 99 F.3d 449 (1st Cir. 1996)).

[94] Rec. Doc. 31.